985 P.2d 486

STATE of Arizona, Appellee,

v.

Elbert HARRISON, Jr., Appellant.

No. CR–98–0381–PR.

Supreme Court of Arizona,
En Banc.

June 18, 1999.

Janet A. Napolitano, Arizona Attorney General, Phoenix By: Paul J. McMurdie, Diane M. Ramsey, Colleen L. French, Attorneys for the State of Arizona.

Dean W. Trebesch, Maricopa County Public Defender, Phoenix By: Terry J. Adams, Attorneys for Elbert Harrison, Jr.

## OPINION

FELDMAN, Justice.

¶ 1  Division One of the court of appeals remanded this case for resentencing, holding that the trial judge failed to comply with A.R.S. § 13–702(B), which requires the judge to state "on the record at the time of sentencing" the reasons for not imposing the presumptive sentence. The court held that because the error was structural, a harmless error analysis could not be applied. *State v. Harrison*, 195 Ariz. 28, 985 P.2d 513 (App. 1998). Dissenting, Judge Noyes concluded that remand was unnecessary because a harmless error analysis should be applied. *Id.* at 37, 985 P.2d at 521–522. The majority's view was based on a 1983 Division One opinion, *State v. Holstun*, 139 Ariz. 196, 677 P.2d 1304 (App.1983). In 1986, however, Di-

vision Two followed the *Holstun* dissent and held that the failure to state aggravating circumstances on the record could be harmless. *See State v. Ybarra,* 149 Ariz. 118, 120, 716 P.2d 1055, 1057 (App.1986). The *Ybarra* court concluded that because the sentencing transcript "fully supports a mitigated sentence," the error was technical and was "harmless beyond a reasonable doubt." *Id.*

¶ 2 We granted review to resolve the conflict between *Holstun* and *Ybarra. See* Rule 23(c)(3), Ariz.R.Civ.App.P. We have jurisdiction under article VI, § 5(3) of the Arizona Constitution.

## FACTS

¶ 3 Elbert Harrison, Jr. (Defendant) passed a highway patrol motorcycle officer at a speed of 100 miles per hour, then swerved and left the highway, pursued by the officer. After running a red light at high speed, Defendant finally came to a stop, left his car, and charged the officer, yelling obscenities and threatening injury. When the officer drew his pistol, Defendant stopped but refused to comply with the officer's instructions, instead charging a second time. Despite having been hit with pepper spray, Defendant continued to threaten and disobey the officer. He managed to return to his car, attempted to run over the officer, and then fled. Again pursued, Defendant reached a dead end, left his vehicle, and ran. He was finally captured by other police officers who had joined the pursuit. After resisting, Defendant was taken to a police facility, where he became even more violent and attacked a group of officers. Defendant was eventually charged with four felonies—one count of unlawful flight, and three counts of aggravated assault against police officers. He was tried and convicted on all counts.

¶ 4 At sentencing, the prosecutor requested aggravated consecutive sentences amounting to almost ten years. The probation officer recommended aggravated consecutive sentences totaling seven and one-half years. The trial judge imposed an aggravated sentence of three years for the flight

charge (a class 5 felony) and an aggravated sentence of 2.25 years [1] for each of the three aggravated assault charges (class 6 felonies), but made all sentences concurrent. Thus Defendant's sentence totaled only three years.

¶ 5 The trial judge made the following comments at the sentence hearing:

I've considered all of the factors and find the following aggravating factors to be present: For your own sake, Mr. Harrison, please learn to speak in a different fashion when you interact with the community at large. You are probably the most foul mouthed individual I have ever met. Your conduct, your words when you were first pulled over at that bank, set off a chain of events which you are now paying for. If you had seen fit to control yourself, to control your anger and deal with the situation in the manner that is warranted, you would probably not be here or you would be here facing much lesser charges.

You engaged in conduct and you have acknowledged that you make no excuses for your behavior. And by that I will mean to say that you accept responsibility for your conduct. That is a good thing, Mr. Harrison, you should do that.

You fled from the police. I heard all the evidence and I'm not going to repeat it. There are, I guess, some disputes about what the evidence established, but you fled from the police when you should have stopped. After that the police tried to calm you down, and then I agree with your attorney, that the events once you were taken to the station transpired very quickly and I believe that the events there were out of control.

Mr. Harrison, whatever your beliefs are, whether they be personal, religious, moral, philosophical, I'm not here to question them and I'm not here to take issue with them, but you have to understand that you, like me, like your lawyer, Mr. Pappalardo, all of us live in a society where there are certain standards of behavior that are ex-

---

1. We note, as did the court of appeals, that a discrepancy exists between the sentencing transcript and the sentencing minute entry regarding

Count III. The sentencing transcript shows a sentence of 2.5 years while the minute entry shows 2.25 years.

pected and we all have to follow them, Mr. Harrison. And that means respecting authority, whether it be the police or school teacher, whatever that represents, whatever we feel we have to do to get along as a civilized society. That's what we're here for. One cannot decide things are bad and then start beating up police officers because you think that that is, from your perspective and from your background, that that is the thing that's called for. If all of us did it, we would be barbarians, Mr. Harrison. The streets would not be safe for our children.

I would hope that you listen to my words and the words that were spoken on your behalf by the Nation of Islam Captain and learn to channel your energy in a more positive and fruitful fashion. And if you don't, Mr. Harrison, you're going to prison for a long time. You're going to be back here shortly and that's where you're going to end out. Beating up police officers, using the kind of language, behaving like you have, that's not acceptable, Mr. Harrison. America, Arizona, is made up of diverse people. I believe people have degrees of tolerance but not to the extent that you have challenged by your behavior.

¶ 6   On appeal, Defendant argued that the trial judge failed to comply with § 13–702(B), which reads as follows:

>   B.   The upper or lower term ... may be imposed only if the circumstances alleged to be in aggravation or mitigation of the crime are found to be true by the trial judge upon any evidence or information introduced or submitted to the court prior to sentencing or any evidence previously heard by the judge at the trial, and *factual findings and reasons in support of such findings are set forth on the record at the time of sentencing.*

(Emphasis added.)   Subsection (C) lists fourteen factors that the sentencing judge should

2.   Similarly, § 13–702(D) contains a list of mitigating circumstances the judge shall consider, including a "catch-all" provision, and concludes with the following directions to the sentencing judge:

>   In determining what sentence to impose, the court shall take into account the amount of

consider as aggravating circumstances and adds a final section: "[a]ny other factors which the court may deem appropriate to the ends of justice." A.R.S. § 13–702(C)(15).[2]

¶ 7   The court of appeals held that the trial judge had not complied with § 13–702(B). The judge's comments did "not include a finding of an aggravating factor under A.R.S. § 13–702(C). The only factor identified was Defendant's flight from police. But flight was an element of one of the substantive crimes and is not a factor in aggravation...." *Harrison*, 195 Ariz. at 36, 985 P.2d at 520; *see also State v. Tinajero*, 188 Ariz. 350, 357, 935 P.2d 928, 935 (App. 1997) (element of crime cannot be used as § 13–702 sentencing factor unless under facts of case it "rises to a level beyond that which is merely necessary to establish an element of the underlying crime"). Because the *Holstun* rule forbids a harmless error analysis, the court remanded the case for resentencing.

¶ 8   Judge Noyes' dissent pointed out that considering the facts of the case, the concurrent sentences were "manifestly lenient" and that the sentencing transcript showed that many aggravating and few mitigating factors existed. Nothing would be gained by remand because the judge's reasons could be identified from the sentencing transcript. Thus Defendant had no real complaint, and by not objecting, the state waived any complaint it might have had. *Harrison*, 195 Ariz. at 37, 985 P.2d at 521–522.

¶ 9   While there is much to be said for the dissenter's view, particularly from a pragmatic standpoint, we believe the majority was correct and that *Holstun* is the better rule.

¶ 10   The court's words in *Holstun* bear repetition:

>   aggravating circumstances and whether the amount of mitigating circumstances is sufficiently substantial to call for the lesser term. If the court finds aggravating circumstances and does not find any mitigating circumstances, the court shall impose an aggravated sentence.

There is value in requiring every sentencing judge to say why he or she is enhancing or reducing a sentence [from the presumptive term]. Such a practice can bring to light the judge's occasional misapprehension of the facts, it ensures that the judge is not relying on matters that are not properly aggravating or mitigating, and it tends to assure that judges will give thought to whether or not each sentence, even a stipulated one, is appropriate. In the case of an aggravated sentence it reaffirms the defendant's individuality while driving home to him the severity of the consequence of his crime. In the case of a mitigated sentence it explains to the community why a convicted person is receiving a lesser sentence than others who violated the same law.... [T]he requirement that reasons for sentence be articulated helps ensure that the process does not become purely mechanical.

139 Ariz. at 197, 677 P.2d at 1305.

¶ 11   In addition to the reasons announced in *Holstun*, the judge's articulation of factors will enable an appellate court to determine whether the trial judge has correctly considered the specific aggravating or mitigating circumstances. The victim, the defendant, and the public have the right to know why a particular sentence was imposed and that it was not arbitrary. These interests are not satisfied simply because an appellate court is able to infer what the judge might have thought. Nor are the purposes of the statute satisfied merely because appellate review reveals that the record supports the result. We believe § 13–702 requires the judge to tell the victim, the defendant, the appellate court, and the public what he or she considered as aggravation and mitigation and why he or she imposed an aggravated or mitigated sentence.

■   ¶ 12   We do not raise form over substance and do not require a specific litany. Nor do we require formal findings or conclusions. Substantial compliance will suffice, but at a minimum this means articulating at sentencing the factors the judge considered to be aggravating or mitigating and explaining how these factors led to the sentence imposed. Anything less would force the appellate courts—as well as the victim, the defendant, and the public—to speculate or infer. A harmless error rule would essentially affirm the judge's decision so long as the record contains facts that may support the result. While such a rule may be appropriate for most situations, we believe it is inappropriate when a trial judge imposes an aggravated or mitigated sentence because § 13–702 expressly prohibits searching beyond the sentencing transcript for support for the imposed sentence.

¶ 13   Substantial compliance is, of course, different from harmless error analysis. Our dissenting colleagues list factors that could support the sentence imposed in this case. However, many of these factors are not found in the sentencing transcript but elsewhere in the record. Substantial compliance means that the factors supporting an aggravated or mitigated sentence must be in the sentencing transcript. To go beyond that would be to conduct a harmless error analysis. Today's dissent also argues that "perhaps [the trial judge] should have ... [said] something like:" and goes on to articulate a list of aggravating factors under the catch-all section. Dissent, ¶ 27. We agree. The trial judge should have done just that. Had she done so, she might have substantially complied with the statute.

■   ¶ 14   We have tried, unsuccessfully, to find substantial compliance under the facts of this case, but to do so would circumvent the purpose behind the statute. For example, the trial judge mentioned in sentencing that Defendant fled from the police. As the court of appeals noted, fleeing from the police is an element of the underlying crime and thus could not support a finding of aggravation unless it "rises to a level beyond that which is merely necessary to establish" the element. *State v. Germain*, 150 Ariz. 287, 290, 723 P.2d 105, 108 (App.1986). Examination of the sentencing transcript, without combing the entire record, reveals nothing about the circumstances surrounding the flight and nothing about how the trial judge considered the role of the flight. If she considered flight an aggravator without finding that it rose to a level beyond that necessary to establish the element of the crime,

she erred. If she believed it rose to higher level, she did not articulate this in the sentencing record. The same applies to two other factors mentioned—anger and "beating up" police officers. Defendant was convicted of three counts of assault on police officers.

¶ 15 Nor is it possible to discern from this sentencing transcript what else the trial judge may have considered as an aggravating circumstance. In the end, the only possible aggravators that can be inferred from the sentencing transcript are: (1) foul language; (2) failure to control anger; (3) fleeing from police; and (4) attacking police officers. All of these, however, are essentially elements of the offenses with which Defendant was convicted—except foul language, and we have no way of knowing whether the trial judge actually considered this an aggravator. At best, the trial judge's comments amounted to a lecture or scolding, not substantial compliance. We agree with the court of appeals that to find substantial compliance here would "effectively eliminate the requirement that trial courts articulate specific statutory factors when imposing aggravating sentences." *Harrison,* 195 Ariz. at 36, 985 P.2d at 521.

¶ 16 Finally, the dissent here argues that our holding makes it "all but impossible for trial judges to" use the catch-all provision, which permits trial judges to consider in aggravation "[a]ny other factors which the court may deem appropriate to the ends of justice." A.R.S. § 13–702(C)(15). We respectfully disagree. Our holding in no way prohibits a trial judge from considering factors other than those listed in paragraphs one through fourteen. It simply requires a trial judge to articulate the catch-all factors considered "on the record at the time of sentencing." A.R.S. § 13–702(B).

## CONCLUSION

¶ 17 We approve the rule in *Holstun* and disapprove of the rule in *Ybarra.* We reject a harmless error analysis, though substantial compliance will suffice. As the court of appeals has said, it would be "better practice for a trial judge to state in the more precise terms of the statute" that he or she has found or considered "certain specific circumstances." *State v. Poling,* 125 Ariz. 9, 11, 606 P.2d 827, 829 (App.1980). Not only is this better practice, it is required by the present statute. We therefore approve the court of appeals' opinion and its order of remand for resentencing. Otherwise, this opinion will be applied prospectively only. *See, e.g., State v. LeBlanc,* 186 Ariz. 437, 439–40, 924 P.2d 441, 443–44 (1996) (applying reasonable efforts instruction in place of *Wussler* rule prospectively only); *Collins v. Superior Court,* 132 Ariz. 180, 189–91, 644 P.2d 1266, 1275–77 (1982) (applying inadmissibility of post-hypnosis testimony prospectively only).

CONCURRING: THOMAS A. ZLAKET, Chief Justice, and CHARLES E. JONES, Vice Chief Justice.

McGREGOR, Justice, dissenting.

¶ 18 I respectfully dissent. The majority holds first that a trial judge's failure to comply with A.R.S. § 13–702.C cannot constitute harmless error. Apparently recognizing that substantial compliance with section 13–702.C is not error at all, the majority then holds that this trial judge did not substantially comply with that statute. I disagree with both those conclusions. I would conclude that the trial judge complied, or at least substantially complied, with section 13–702.C and that she fulfilled all the goals set out in *State v. Holstun,* 139 Ariz. 196, 677 P.2d 1304 (App.1983), which the majority today approves.

### A.

¶ 19 By characterizing *Holstun* as setting out the "better rule," the majority apparently also adopts the holding of *Holstun* that failure to comply with section 13–702.C cannot be harmless error. 139 Ariz. at 198, 677 P.2d at 1306. Of course it is a better practice, as the majority states, for a trial judge to describe precisely the specific circumstances found to be aggravating or mitigating. This court said so in *State v. Mahler,* 128 Ariz. 429, 626 P.2d 593 (1981), and again in *State v. Gannon,* 130 Ariz. 592, 638 P.2d 206 (1981). In both those cases, however, we found that the trial judge substantially complied with

the statute and affirmed the aggravated sentences imposed.

¶ 20 The majority's decision to adopt a "no harmless error" rule reflects quite an extraordinary approach, which we have rejected in the context of considering whether errors, even those of constitutional dimension, can be harmless under the facts of a particular case. The majority justifies its extraordinary holding by noting that, while in most instances we would affirm a "judge's decision so long as the record contains facts that support the result," doing so is inappropriate here because the statute requires the judge to state his or her reasons. Op. at ¶ 12. However, we previously have held that a judge's failure to comply with the strict mandates of a statute can indeed constitute harmless error. *See State v. Mendoza*, 170 Ariz. 184, 194, 823 P.2d 51, 61 (1992) (granting a continuance that violates the statutorily mandated 150-day rule for bringing a trial can constitute harmless error). We have employed harmless error analysis in situations involving constitutional, evidentiary, and jury related matters, as well as issues affecting elements of charged offenses. For example, failure to appoint counsel for a defendant at a preliminary hearing has constituted harmless error. *See State v. Miranda*, 104 Ariz. 174, 184, 450 P.2d 364, 374 (1969); *State v. Moses*, 101 Ariz. 426, 427, 420 P.2d 560, 561 (1966). Errors involving the alleged deprivation of constitutional rights can be harmless. *See State v. Hein*, 138 Ariz. 360, 365, 674 P.2d 1358, 1363 (1983). Errors involving improper instructions do not necessitate a new trial when the jury's verdict is fair and reasonable or when the complaining party is unable to show prejudice resulted. *See Bliss v. Treece*, 134 Ariz. 516, 520–21, 658 P.2d 169, 173–74 (1983). Fundamental error that involves differing mental states can be harmless when total innocence is the defense presented as to each mental state charged. *See State v. Herrera*, 176 Ariz. 9, 15, 859 P.2d 119, 125 (1993). A violation of the confrontation clause can be harmless error. *See State v. Wood*, 180 Ariz. 53, 64, 881 P.2d 1158, 1169 (1994). Evidentiary errors, such as the admission of hearsay statements, can be fundamental, reversible error in one case and harmless in another depending upon the

facts of the case. *See id.; State v. Eastlack*, 180 Ariz. 243, 256–57, 883 P.2d 999, 1012–13 (1994). When a defendant does not testify at trial, the failure to obtain an on-the-record waiver of the defendant's right to testify can constitute harmless error. *See State v. Gulbrandson*, 184 Ariz. 46, 65, 906 P.2d 579, 598 (1995). Failure to give a limiting instruction concerning prior bad acts can result in harmless error. *See State v. Atwood*, 171 Ariz. 576, 639, 832 P.2d 593, 656 (1992). The erroneous admission of DNA evidence constitutes harmless error when the consistency and strength of other evidence establish a defendant's guilt. *See State v. Bible*, 175 Ariz. 549, 589, 858 P.2d 1152, 1192 (1993).

¶ 21 These cases apply the generally accepted rule that virtually any error, under particular circumstances, can be harmless. I cannot justify holding, as the majority does, that we will affirm a trial judge's decision if the record supports it *unless the decision involves section 13–702.* As the dissenting judge stated in *Holstun*, a judicial decree that an error in stating aggravating factors can never be harmless is an "elevation of this type of error to a status not enjoyed even where error of constitutional dimension is involved . . . ." 139 Ariz. at 199, 677 P.2d at 1307.

**B.**

¶ 22 Even if I agreed with the statement in *Holstun* that appellate courts should not review the situation considered in that case for harmless error, I would find the facts there readily distinguishable from those of this case. In *Holstun*, the trial judge gave no reasons for his decision to impose an aggravated sentence. In such a situation, which occurs rarely, asking an appellate court to search the record for any factors that might justify the aggravated sentence would ask the appellate court, the defendant, and the public to speculate about the factors relied upon by the trial judge. In that situation, an appellate court could well conclude the trial judge's error constituted reversible error.

¶ 23 The situation here, however, is very different. This trial judge expressly announced that she had "considered all of the

factors and [found] the following aggravating factors to be present." The majority appar-ently agrees that, when a trial judge attempts to comply with section 13–702.C, we will affirm the sentence imposed if the judge substantially complied with the statute, for the majority states it tried, "unsuccessfully, to find substantial compliance under the facts of this case...." Op. at ¶ 14. In my view, the majority's inability to find substantial compliance reflects an unduly narrow, formalistic reading of the statute and fails to give adequate deference to the trial judge.

¶ 24 The first problem with the majority's approach relates to its underlying construction of section 13–702. In paragraphs one through fourteen of subsection C, the statute lists fourteen specific factors the trial court can consider as aggravators. Paragraph fifteen, however, permits the trial judge to consider "[a]ny other factors which the court may deem appropriate to the ends of justice." A.R.S. § 13–702.C.15. Although the majority refers to the fifteenth paragraph, or "catch-all provision," when it considers whether the trial court substantially complied, it gives no weight to the trial judge's findings, which I regard as fitting squarely within the catch-all provision.[1]

¶ 25 The majority's failure to consider fully whether the trial judge's comments establish aggravating factors under paragraph fifteen may result from its insistence that trial judges state aggravating factors "in the [ ] precise terms of the statute." Op. at ¶ 17. Such a requirement makes it all but impossible for trial judges to utilize paragraph fifteen, which permits consideration of "other factors which the court may deem appropri-

ate to the ends of justice." A.R.S. § 13–702.C.15. Factors found under that provision will never follow the "precise [language] of the statute," for the provision is intended to allow trial judges to consider factors *other than* those expressly enumerated in the statute.

¶ 26 If we afford paragraph fifteen some meaning, which I believe we must, then the trial judge's substantial compliance becomes even clearer. As I mentioned earlier, the trial judge began by stating, expressly and not by implication, that she found certain aggravating factors. The majority rejects the trial judge's reference to defendant's flight from police because flight is an element of one of the underlying charges. The record, however, establishes facts that exceed those needed to support the one charge of unlawful flight of which this defendant was convicted. The facts, as related by the majority, Op. at ¶¶ 3–5, show that Harrison fled from the police when they tried to make the initial stop; that he fled in his car after his initial encounter with the officers; and that he ran away again after they stopped his car a second time. Those facts rise "to a level beyond that which is [ ] necessary to establish" the flight conviction. Op. at ¶ 14. The trial judge said flight was an aggravating factor; the record shows she appropriately considered that fact. As we do in other instances, we can and should presume she knew and applied the law.

¶ 27 In addition to referring to Harrison's flight from police, the trial judge then described in some detail other factors intended to explain the sentence she was about to impose. Although the majority states it does

1. Even if we were to limit our consideration to the specifically enumerated factors, the record shows substantial compliance by the trial judge. As the majority notes, a finding that establishes one of the elements of the underlying crime cannot be considered unless it rises to a level beyond that needed to establish the element. The record shows that requirement is met. Paragraph one of subsection C defines as an aggravating factor the infliction or threatened infliction of serious physical injury, unless the circumstance is an essential element of the offense of conviction. Harrison was convicted of three counts of aggravated assault, but the facts show several additional uncharged incidents of that behavior. After the initial stop, he charged a police officer once, then a second time. As he

fled in his car, he tried to run over the officers. After the second stop, he resisted arrest. At the police station, he violently attacked a group of police officers. Those facts establish more than is needed to justify a conviction of three counts of aggravated assault. Asking an appellate court to consider whether the undisputed facts of record establish these aggravating elements imposes no undue burden on the court. Previously, when faced with the argument that a trial judge relied on inappropriate factors to impose a sentence, we have looked to the record to determine whether the judge would have imposed the same sentence absent reliance on those factors. *See, e.g., State v. Garza,* 192 Ariz. 171, 962 P.2d 898 (1998).

not "raise form over substance" and does not "require a specific litany" or "formal findings or conclusions," I am left to wonder what else the trial judge could have done. Op. at ¶ 12. Using only those factors found in the sentencing transcript, see Op. at ¶ 5, perhaps she should have numbered her findings, saying something like:

I find as an aggravating factor that you fled from the police on three occasions, which conduct rises to a level beyond that necessary to establish the offense of unlawful flight of which you were convicted.

I find as a further aggravating factor that your conduct escalated a minor traffic stop into a series of felonious criminal offenses during which you unnecessarily placed at risk your own safety and that of a group of police officers. I find (1) that your actions show repeated instances of an inability to control your anger; (2) that your inability to control your anger was the factor that led to events spiraling nearly out of control; (3) that you evidenced a refusal to follow the standards of behavior that society expects from us all; (4) that your foul language, which exceeded any expected bounds, further escalated the situation; and (5) that your actions show your repeated refusal to respect the authority of law enforcement officers. I find that your conduct was so extreme as to indicate the likelihood that you will commit serious offenses in the future unless you understand that your actions carry consequences.

I conclude that the ends of justice deem it appropriate to impose aggravated sentences for the offenses of which you have been convicted.

¶ 28  The findings stated above simply repeat, in a slightly altered format, the statements made by the trial judge. The question then becomes whether such findings would satisfy the values the majority asserts will be furthered by requiring trial judges to articulate their reasons for imposing an aggravated sentence.

¶ 29  Relying upon *Holstun*, the majority says that applying a "no harmless error" approach to section 13–702 ensures that a

trial judge's misapprehension of the facts will come to light. This trial judge's comments, however, show beyond a doubt that she understood the facts, and not even the defendant suggests otherwise. That goal has been met. A second goal is to assure that the judge will give thought as to whether the sentence imposed is appropriate. Again, the comments of this trial judge reveal that she gave careful thought to the appropriate sentence. In fact, she rejected the sentencing recommendations of the prosecutor and Harrison's probation officer. The third goal that results from requiring trial judges to articulate aggravating factors is that stating reasons reaffirms the defendant's individuality, while driving home the severity of the consequences of the crime and the effect of his extreme conduct in increasing the seriousness of the charges he faced. The sentencing comments here reveal more appreciation of the defendant's individual motivations than often is apparent. The trial judge's comments reveal an unusually clear attempt to explain to the defendant the severity of the consequences of his conduct. The trial judge met that goal. The fourth goal is to assure that the sentencing process will not become mechanical. Surely no one reading the judge's attempt to shape this penalty to this defendant can think for a moment that a "mechanical" process took place.

¶ 30  Of the *Holstun* factors, that leaves the goal of ensuring that the trial judge does not rely on matters that are not properly aggravating factors. In *Holstun*, that warning served an apparent purpose because the trial judge articulated no reasons for aggravating the sentence. In this instance, I see no use of improper factors, unless the majority intends to hold that paragraph fifteen lacks effect. If the statute allows a trial judge to act pursuant to that paragraph, then the judge met that goal also.[2]

¶ 31  The majority adds another reason to the *Holstun* litany: requiring articulation of factors "will enable an appellate court to determine whether the judge has correctly considered the specific aggravating or mitigating circumstances." Op. at ¶ 11. Of course the appellate court must know what

---

**2.**  It is worth noting that the mitigating factors found by the trial judge all fall within the "catch-all provision" of A.R.S. § 13–702.D. Those mitigating factors are no less valid because they are not within the enumerated mitigating factors listed in the statute.

factors the trial judge used. A rule requiring substantial compliance with the statute adequately advances that goal, and for the reasons stated above, I would find substantial compliance.

### C.

¶ 32 For the foregoing reasons, I would hold that a trial judge's alleged failure to comply with A.R.S. § 13–702 is subject to harmless error analysis. In this case, I would conclude that the trial judge, either expressly or substantially, complied with the statute. I also would conclude that the reasons stated by the judge independently, and as supported by other matters of record, justify the aggravated sentence imposed and advance the goals of requiring judges to articulate their reasons for imposing aggravated or mitigated sentences. Therefore, I would affirm the sentences imposed.

CONCURRING: FREDERICK J. MARTONE, Justice.